UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------X
UNITED STATES OF AMERICA,

        Plaintiff,

**MEMORANDUM & ORDER**
-against-
**06-CR-285 (NGG)**

STEFAN CICALE, et al.,

        Defendants.
----------------------------------------------X
GARAUFIS, United States District Judge.

Stefan Cicale ("Defendant" or "Cicale") has been detained pending trial since May 11, 2006. On July 16, 2006, Defendant Cicale moved before Magistrate Judge Ramon Reyes for release pending trial upon a bail package of properties owned by Cicale's family, conditioned on a nightly curfew at his parents' home, and pretrial supervision. (Cicale Mem. Supp. Mot., dated July 20, 2006 at 4.) The Government opposed this motion, contending that Cicale is a danger to the community and that he presents a flight risk. (Gov't Mem. Opp. Mot., July 28, 2006 ("Gov't Mem.") at 4-7.) On July 28, 2006, Magistrate Judge Reyes ordered Cicale released on bail. (Transcript of Bail Application ("July 28, 2006 Tr."), dated July 28, 2006 at 25.) Magistrate Judge Reyes' order was appealed to this court. On August 2, 2006, oral argument was heard on this motion, at which I ruled from the bench, reversing Judge Reyes and denying bail. (Transcript of the Hearing ("Tr.") at 45-46.) In this Memorandum and Order, I shall set forth my reasoning in greater detail as to why this court is compelled to deny Cicale's release under the Bail Reform Act of 1984.

**I.    FACTUAL BACKGROUND**

Cicale, who is thirty years old, was indicted on May 11, 2006 in a multi-defendant

indictment alleging Cicale's involvement in illegal activities with other defendants who are members of the Bonanno organized crime family ("OCF"). Specifically, Cicale is charged as an accessory after the fact to the murder of Robert McKelvey, by dismembering and burning McKelvey's body shortly after McKelvey was strangled, stabbed, then drowned. (Indictment ¶¶ 39-40; Gov't Mem. at 2; Tr. at 3-4.) Cicale also faces two counts of loansharking with a co-defendant, John Tufarelli, who is charged with racketeering activities in furtherance of the Bonanno OCF. (Indictment ¶¶ 57-60; Gov't Mem. at 3; Tr. at 4-5.) In addition, the Government has proffered that Cicale has engaged in the following: (a) uncharged loansharking activity with multiple members of the Bonanno OCF; (b) collecting tribute payments for admitted Bonanno solider Michael Maggio and co-defendant Gino Galestro, an alleged member of the Bonanno OCF; (c) involvement in the shooting at the house of a person who assaulted an associate of the Bonanno OCF; (d) illegal possession of a handgun; (e) burglarizing homes in connection with his business as a home renovation contractor; and (f) selling prescription narcotics. (Gov't Mem. at 3-4.)

On July 28, 2006, a bail hearing was conducted before Magistrate Judge Reyes. After oral argument, Judge Reyes pronounced the decision of release "a very close call," the government having produced some evidence of dangerousness and of risk of flight, but erred "on the side of releasing him with serious stringent conditions." (July 28, 2006 Tr., at 25.)

The Government appealed Judge Reyes' ruling to this court, which heard oral argument on August 2, 2006. After a hearing, I determined that the Government showed by clear and convincing evidence that Cicale is a danger to the community, and that no set of conditions could prevent his danger to the community upon release. At that time I informed the parties that I

would issue a written decision to explain my ruling. (Tr. at 45-46.)

## II. DISCUSSION

The Bail Reform Act of 1984 ("BRA") has been interpreted to provide that "[a] district judge must undertake a <u>de novo</u> review of a magistrate judge's decision to release or detain a defendant." <u>United States v. Gotti</u>, 358 F. Supp. 2d 280, 282 (S.D.N.Y. 2005). Thus, this court "should not simply defer to the judgment of the magistrate, but reach its own independent conclusion." <u>United States v. Leon</u>, 766 F.2d 77, 80 (2d Cir. 1985).

The BRA directs the court to impose the least restrictive bail conditions necessary to protect the safety of the community and reasonably assure the defendant's appearance at trial. 18 U.S.C. § 3142(c)(1)(B). However, where there is no condition or combination of conditions that would assure adequate pretrial supervision, the Act directs the court to order the defendant's detention pending trial. 18 U.S.C. § 3142(e). A finding of risk of flight must be supported by a preponderance of the evidence, <u>United States v. Jackson</u>, 823 F.3d 4, 5 (2d Cir. 1987), while a finding of dangerousness must be supported by clear and convincing evidence. <u>United States v. Ferranti</u>, 66 F.3d 540, 542 (2d Cir. 1995). Cicale is presumed innocent, and it is only a "limited group of offenders" who should be denied bail pending trial. <u>United States v. Gotti</u>, 358 F. Supp. 2d 280, 283 (S.D.N.Y. 2005) (quoting <u>United States v. Shakur</u>, 817 F.2d 189, 195 (2d Cir. 1987)).

### A. Risk of Flight

The government argues that detention is warranted because it has shown that Cicale is a flight risk and a danger to the community. I find that the Government has not shown by a preponderance of the evidence that Cicale is a flight risk. The Government correctly refers this

3

court to the fact that Cicale faces a substantial prison sentence if he is convicted of the crimes alleged in the indictment, and, as shall be discussed infra, Cicale has no clear means of legitimate employment. However, it is uncontested that Cicale is a U.S. citizen who has lived in the same general area for his entire life, that he has traveled very little outside of New York, and that his entire family lives in the area. (Tr. at 36-37.) His family is also willing to place substantial assets at stake to assure Cicale's presence in court, which factors in favor of release on the question of flight risk, but not for dangerousness. See Ferranti, 66 F.3d at 543-44 (finding that substantial bond that safeguards against flight does not necessarily deter danger to the community). On balance, I find it unlikely that Cicale would flee, despite the substantial sentence that may await him if he were convicted.

### B. Dangerousness to the Community

Turning now to whether Cicale presents a danger to the community, I must consider the following factors in deciding whether there are conditions of release that will reasonably assure the safety of the community: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by Cicale's release. 18 U.S.C. § 3142(g).

#### 1. Nature and circumstances of the offenses charged

Cicale is charged with two counts of loansharking, and one count of accessory after the fact to a murder. (Indictment ¶¶ 39-40, 57-60.) Taken in its entirety, the charged acts allegedly committed by Cicale include serious crimes of violence that show a propensity for violence that presents a serious danger to the community.

4

It is the law of this circuit, as conceded by the defense (Tr. at 17), that the two loansharking counts against Cicale are crimes of violence, and are especially probative of dangerousness where, as here, the Defendant is alleged to have assaulted a victim to collect a debt. (Tr. at 6-7); see United States v. Rodriguez, 950 F.2d 85, 88 (2d Cir. 1991) (finding that violence committed "over a small debt is probative of dangerousness").

Furthermore, Cicale is charged with accessory after the fact to murder, which I find to be a "crime of violence" under Section 3156 of the BRA. The accessory after the fact to murder count charges Cicale with (a) knowing that the victim had just been murdered, and (b) helping the murderers evade detection by disposing of the victim's body. See 18 U.S.C. § 3 (An individual is an accessory after the fact when that person, "knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment . . . .") Accessory after the fact to murder by its very definition involves knowledge that the offender's actions aid in the commission of a violent act. See United States v. Chimurenga, 760 F.2d 400, 404 (2d Cir. 1985) (finding that defendant's leadership role in conspiracy to commit armed robbery constitutes a crime of violence because the "collective criminal action" involves a "substantial risk" of violence).

The defense's argument that accessory after the fact to murder is not a crime of violence because the victim was dead before Cicale's alleged role in the scheme is unpersuasive.[1] Congress's intent in including "crime of violence" among the factors of dangerousness was to require courts to consider whether the charged acts indicate that the individual is likely to engage

---

[1] I note without comment that I find the Government's argument that McKelvey's body became "property" after he was murdered equally unconvincing. (Tr. at 24.)

in violent acts in the future.  See United States v. Dillard, 214 F.3d 88, 101-3 (2d Cir. 2000) (finding a felon-in-possession charge to be a "crime of violence" under the BRA).  It is clear to this court that dismembering and incinerating a body as part of an endeavor by a "crew" of the Bonanno OCF to murder McKelvey is part of a violent act because it evinces a wanton disregard for human life and a willingness to participate in an act of extreme and depraved violence. Therefore, this court does not find that the timing of Cicale's alleged *role* in the murder to remove him from the violent *intent* of the murder.  See United States v. Ciccone, 312 F.3d 535, 542 (2d Cir. 2002) ("the BRA 'does not require that the defendant himself commit acts of physical violence as a condition precedent to a detention order'") (quoting Ferranti, 66 F.3d at 543).  The defense's argument that this court's determination of Cicale's dangerousness is "limited to a determination of the loansharking evidence," (Tr. at 17) is therefore without merit.

As Cicale is alleged to have played a key role in a homicide for an organized crime family with knowledge that his role served to ensure that the killers would not be detected, I find that this allegation is extremely serious, and this charge in addition to the two loansharking charges weigh heavily in favor of his detention.

### 2. The weight of the evidence against Cicale

Next, I find that the weight of the evidence against Cicale is strong, if not overwhelming. The Government proffers that a cooperating witness, Michael Maggio, will testify that Cicale was an associate in his "crew" in the Bonanno OCF, and that he watched as Cicale and others dismembered and incinerated McKelvey's body.  (Tr. at 5-6, 21-22, 29-32.)  In addition, the government summarized recorded statements by Cicale that he was a member of Maggio's "crew," (Tr. at 5, 29), and that he enforced the collection of loansharking debts for the Bonanno

6

OCF, including one instance in which he assaulted a loansharking victim. (Tr. at 6-7, 24.)

Defense counsel's argument that the evidence against Cicale is weak because it is supported mainly by one cooperating witness is unavailing. (Tr. at 20.) The cooperating witness, Michael Maggio, is an admitted soldier in the Bonanno OCF who asserts that Cicale was an associate in his crew. (Tr. at 38.) Maggio is the government's central witness in this matter, and he has provided material evidence regarding the most serious acts contained in the indictment. The fact that Maggio is the only witness who "places Mr. Cicale at the scene" (Tr. at 28) of the murder of McKelvey does not necessarily suggest Defendant's innocence, as it is reasonable to infer that only the leaders of an organized crime crew would know about each individual's separate responsibilities in a murder orchestrated by that crew. Accordingly, I find that evidence that a crew leader identifies Cicale as an associate who committed crimes of violence for the crew is strong evidence of the charged crimes.

### 3. The history and characteristics of Cicale

The BRA requires that this court consider Cicale's history and characteristics, including his "physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g). Of these, the most relevant topics are his past criminal conduct, employment and financial history, and family and community ties.

Cicale has no prior criminal convictions, (Tr. at 26) which weighs in his favor. United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001). However, the Government has presented substantial evidence that Cicale has engaged in criminal activity on behalf of the Bonanno OCF,

including acts of violence. Apart from the charged acts, the Government proffers that Cicale collected loansharking debts for two other individuals, sold and used illegal drugs, possessed an illegal gun, burglarized homes, and that he was with a group that shot into the house of a person in retaliation for that person's assault of a Bonanno OCF member. (Tr. at 5-8.) The Government also proffers that within the next month it will seek a superseding indictment charging Cicale in a racketeering count in his capacity as an associate of the Bonanno OCF. (Tr. at 39.) The Government's evidence of Cicale's uncharged violent criminal activity further evinces his dangerousness to the community, even if the alleged violent activity did not initiate criminal proceedings. Mercedes, 254 F.3d at 437-38.

In addition, the Government proffers that Cicale uses illegal drugs, and that Cicale allegedly stated in a recorded conversation that he possessed a "big bag" of cocaine, (Tr. at 23) are factors in favor of detention. See 18 § 3142(g)(3)(A).

Consideration of Cicale's employment and finances also weigh in favor of detention. Despite Cicale's earlier representations that he is a successful contractor, his contracting license expired a year ago, and the person for whom he represented he would work does not list him as an employee. (Tr. at 9, 32.) His income statements show that he has not reported income as a contractor for over a year. (Tr. at 9.) It is therefore unclear what lawful work Cicale would perform if he were permitted to continue his regular employment. Furthermore, the Government has proffered that he has burglarized construction sites during his work as a contractor, (Tr. at 23-24) including one instance in which, in response to a dispute that Cicale had with a competing contractor, Cicale and his crew "stole construction equipment, windows and doors from" houses renovated by that contractor. (Tr. at 8.) Certainly, it would contravene the purposes of the BRA

8

if this court were to permit Cicale to work in a business that *increased* the likelihood that he would engage in illegal activities.

Regarding Cicale's community and family ties, I have reviewed a number of letters from friends and relatives of Cicale, which portray him as loyal, hardworking, and respectful. (See Def. Mem. Ex. A.) Accepting these descriptions of Cicale as true, there is no necessary contradiction between these attributes and the Government's evidence of Cicale's dangerousness to the community, and ties to members and illegal activities of the Bonanno OCF. Evidence that Cicale coordinated the payments of tribute to superiors within his "crew" is a strong indication that Cicale is an associate of the Bonanno OCF, an organized crime family that itself engages in violence and obstruction of justice to further its criminal enterprise. Specifically, the Government proffered a recorded conversation in which Cicale stated that for the past three years, he provided $1,500 to the head of his crew each December. (Tr. at 29-30.) The defense's attempt to characterize such payments as a collection for "a Christmas dinner" (Tr. at 32) or "a big fancy dinner in a big fancy restaurant in Midtown Manhattan" (Tr. at 33) stretches credulity beyond the breaking point. By his own estimate, Cicale earned $25,000 last year, (id. at 37) and it is simply not credible that he would spend thousands of dollars at an annual dinner with acquaintances. In light of the evidence that Cicale was associated with the Bonanno OCF, this court finds that the more credible inference is that he was coordinating tribute payments to his superiors in organized crime.

Therefore, I find that Cicale's characteristics and history support a finding of dangerousness to the community.

**D. The nature and seriousness of the danger posed by Cicale's release**

This "factor essentially directs the court to predict, based on an assessment of the charges against the defendant, and the defendant's history and characteristics, whether he would pose a harm to the community at large or to any specific individuals." Gotti, 358 F. Supp. 2d at 287-88. I disagree with Judge Reyes's conclusion that this is a close case, primarily for the following three reasons. First, the three acts of violence alleged to have been committed by Cicale in the indictment are serious. The Government has offered strong evidence that Cicale has engaged in a pattern of violent activity up until his recent arrest, to wit, the Government alleges that Cicale's loansharking activities occurred less than a year ago, and that the alleged disposal of McKelvey's body barely over a year ago. (Tr. at 28.) In particular, the charge of accessory after the fact to the murder of McKelvey demonstrates a willingness to participate in an orchestrated act of extreme violence by obstructing justice on behalf of the Bonanno OCF, which strongly supports a finding of dangerousness. See id. at 288. In addition to the charged acts, the Government has provided evidence of a litany of other violent and illegal activities that militate in favor of detention.

Secondly, the quality of evidence against Cicale respecting the charged conduct is strong. The Government has proffered the anticipated testimony of an admitted soldier in and crew leader of the Bonanno OCF, and other direct evidence, including taped recordings, that demonstrate Cicale's involvement in the charged acts. See United States v. Tortora, 922 F.2d 880, 886 (1st Cir. 1990) (finding of dangerousness supported by "direct evidence [of the charged acts], including tape recordings. While the admissibility of the recordings may be an issue at trial, that circumstance does not preclude their use at a bail hearing.")

10

Lastly, while Cicale has not yet been charged with racketeering, the Government has produced strong evidence that he is an associate in an organization that engages in acts of violence to further its illegal activities. The record is bare of any indication that Cicale renounced or diminished his alleged association with the Bonanno OCF, and the Government's proffer of evidence regarding Cicale's alleged charged and uncharged criminal activity demonstrates that Cicale's alleged criminal activities continued virtually to the day of his arrest. Cf. id. at 286 (Defendant actions showing intention to break with criminal past would weigh in favor of release.).

The evidence that the Government has offered therefore shows by clear and convincing evidence that Cicale engaged in acts of violence in the furtherance of a dangerous organized crime family, that he is a danger to the community, and that there are no conditions that can adequately assure the safety of the community.

## III. CONCLUSION

After a de novo review, I find that the government has established by clear and convincing evidence that Cicale presents a danger to the community, and that no set of release conditions can adequately assure the safety of the community. See Mercedes, 254 F.3d at 436-37. I therefore vacate Magistrate Judge Reyes' release order, and order that Cicale remain in detention pending trial.

SO ORDERED.

Dated: August 7, 2006  
      Brooklyn, N.Y.

_____/s/_____  
Nicholas G. Garaufis  
United States District Judge